## McCasky *vs.* Sherman.

In accordance with the common law of England, and with the decisions of this state, the law of the state of New York, as it now stands, and as evidenced by the reports of their judicial decisions, makes the endorsee of a negotiable promissory note, who takes it in the ordinary course of business in payment of a pre-existing debt to himself, a *bona fide* holder thereof for value, who may recover its amount as against any prior party, although he may have received it from a holder, not authorized to negotiate it.

This was an action of *assumpsit* to recover the amount of a promissory note.

The declaration contained a special count to which the common counts were added.

The note declared on was for the sum of $755.87; was dated at Albany on the 16th day of January, 1849; was payable ninety days after date, at the bank of Albany, to the order of the defendant, and signed and endorsed by him.

The defendant pleaded the general issue with notice of special matter to be given in evidence.

The superior court for the county of Hartford, at the term holden in December, 1855, found the following facts, and reserved the case for the advice of this court.

The defendant was a native of Albany, in the state of New York, and resided there until about the year 1838, when he removed to the city of New York; for several years before his removal from Albany, he was engaged in the practice of law, and thereafter, until after the making of said notes, had, residing in Albany, two brothers, one of whom viz: E. J. Sherman, at the time the first note hereafter described was made, and when it fell due and was protested, was engaged in the practice of law, and the other in mercantile pursuits, as a partner in the firm of Bachelder & Sherman. Both said brothers of the defendant were known to the plaintiff, and when the first note fell due, both knew that the defendant had removed from New York, and then

resided at Buckland, in the town of Manchester, in Connecticut; but the plaintiff did not know of said removal of the defendant, or where the residence of the defendant then was. The defendant, after his removal from Albany, resided with his family and was engaged in the practice of law in the city of New York, until the spring of the year 1848, when he came to Connecticut and opened a law office in Hartford, and about the first of June, 1848, removed his family from the city of New York to Buckland, where he subsequently resided. On the 25th of July, 1848, Josiah S. Van Ingen, a nephew of the defendant, applied to him at Buckland, to endorse for the accommodation of Van Ingen, Van Ingen's note of that date, for $730.74, payable to the order of the defendant, at the Bank of Albany, in said city of Albany, on the 4th of October, 1848, and on interest, and thereupon Van Ingen made said note, and the defendant endorsed it in blank, and delivered it to Van Ingen, without any consideration for said endorsement, and entirely for Van Ingen's accommodation.

Before said note fell due, Van Ingen at Albany transferred and delivered said note for an adequate consideration in money to the plaintiff, who purchased it in the regular course of business, without any notice that it had been endorsed by the defendant for said Van Ingen's accommodation, or was not good business paper, to the validity of which, as against the maker or endorser, no objection could be made.

The plaintiff lodged said note in the Bank of Albany for collection, and when it fell due, viz: on the 4th of October, 1848, being unpaid, the notary employed to protest it, not knowing the residence of the defendant, inquired of the plaintiff where it was; the plaintiff did not know; but knowing that Sherman, of the aforesaid firm of Batchelder & Sherman, was a brother of the defendant, he went to the store of said firm, and there enquired where the defendant resided, and was told that he resided in the city of N. York, which information thus obtained, the plaintiff communicated to said notary; and thereupon said notary, in due time, forwarded a notice

McCasky *v.* Sherman.

of the non-payment and protest by [mail, directed to the defendant at the city of New York; no further enquiry being made for the defendant's residence by the plaintiff of said notary, said notice was never received by the defendant.

In the month of December, 1848, Van Ingen applied to the defendant at his dwelling in Buckland, and requested him to endorse another note of Van Ingen, for the purpose of renewing and taking up the first, and informed the defendant that the plaintiff desired such renewal, but the defendant refused to make such endorsement, assigning as a reason to Van Ingen, that he was discharged from said first note, for want of notice of its non-payment and protest, and that he would not endorse another note.

At the time the note in suit was made, the defendant being in New York, Van Ingen, (then residing in Albany,) applied to the defendant, and falsely represented to him that the plaintiff had endorsed said first mentioned note; that it was then lying in the bank under protest; that the plaintiff, though a man of considerable property, was pressed for money, and unable to pay said note ; that he desired to obtain further accommodations from said bank, but could not until he had first paid said note, the bank refusing to discount his paper while said note was lying under protest. And that the plaintiff had requested him to procure from the defendant the loan of the defendant's note, to enable the plaintiff to get it discounted, and with the proceeds to take up said protested paper in order that the plaintiff might obtain further accommodations from said bank, and assured the defendant that the plaintiff would take up the new note when it fell due, and that the defendant should in no manner be subjected thereon, and the defendant, relying upon said representations and assurance, made the note in suit and delivered it to Van Ingen, as a loan for the accommodation of the plaintiff, to be forwarded by Van Ingen to the plaintiff, and not for the purpose of paying said note, or of being exchanged therefor, and did not intend thereby to renew, or acknow-

ledge, his liability as endorser of said first mentioned note, and so informed Van Ingen at the time. Said last mentioned note was by Van Ingen, in the defendant's presence, enclosed in a letter directed to the plaintiff at Albany, and deposited in the New York post-office for transmission to the plaintiff by mail, but whether said letter contained any information regarding said note, or of the use to which it was by the defendant designed to be applied, did not appear. Said representations of Van Ingen to the defendant were unauthorized by the plaintiff, and were false in fact; the plaintiff received said last mentioned note before its maturity, in said letter from Van Ingen; but had no notice or information of the manner in which it had been obtained, and received it in the regular course of business in payment of said first mentioned note, and not as a loan, supposing and believing that it was the duty of the defendant to pay said first mentioned note, as his own debt, and that he had made said last mentioned note and forwarded it to the plaintiff for that purpose. It was also found that no action could be sustained against the defendant, upon his endorsement of said first mentioned note.

*Hungerford & Cone*, for the plaintiff.

1. The defendant is, by the laws of the state of New York, liable for the payment of the note in suit, notwithstanding any fraud practiced upon him by Van Ingen. The note was taken in the regular course of business, before due, and in payment of the defendant's own debts, his liability as endorser having been fixed. *Pugh* v. *Durfee*, 1 Blatch., 412.

2. If received in payment of a debt of Van Ingen, it was received for a valuable consideration, and the defendant is liable. Story on Prom. Notes—note to § 195, p. 232, and the numerous authorities there collected, and particularly the case of *Swift* v. *Tyron*, 16 Pet., 15, cited at length in this note. *White, &c.* v. *Springfield Bank*, 3 Sanford, 222. *Catlin* v. *Hanson*, 1 Duer., 309. *Young* v. *Lee*, 18 Barb. R., 187. In

these cases that of *Mather* v. *McDonald*, 6 Hill, 93, which will be relied upon by the defendant, is fully commented upon and explained. The plaintiff is entitled to recover, by the laws of the state of New York, upon the common counts, either upon the note now in suit, or by virtue of the defendant's endorsement. *Cayuga Co. Bank* v. *Warden &c.*, 2 Sel., 19.

*Fellowes & Sherman*, for the defendant.

1. The plaintiff is the payee, and original party to the note in suit, and so decided to be in the pleadings, and is so in law. The note was procured of the defendant for the plaintiff's accommodation, by fraud of Van Ingen. The plaintiff is affected with knowledge of the fraud, and liable to this defence, being the payee. If he takes the note of Van Ingen, he makes him his agent for procuring it, and is bound by his acts, and must take it with all the defences attached to it. If he repudiates the acts of Van Ingen, who professed to act as his agent, he gets no title to the note. It never was delivered to him.

2. But if the plaintiff is not the payee, and original party, as the note was procured of the defendant by fraud, the plaintiff must show himself to be a *bona fide* holder, for value. The *onus* is on him to show this, and failing so to do, he cannot recover. No value is pretended to have been paid by him. It is said that he received it, in payment of the former note. The court has found that he did not so receive it. He could not do so, without the defendant's assent. The defendant made it for an entirely different purpose, to wit: the plaintiff's accommodation. The court have so found. But if he did, yet the contract was made in New York, and payable in N. York, and must be construed according to the law of New York; and by the law of New York, an antecedent debt of itself is not a valuable consideration. The plaintiff parted with nothing, he has not the old note,

but what has become of it, does not appear. The defendant never received it. *Bay* v. *Coddington*, 5 Johns., ch. 54. *Wardell* v. *Howell*, 9 Wend., 170. *Rosa* v. *Brotherson*, 10 Wend., 85. *Root* v. *French*, 13 Wend., 570. *Payne* v. *Cutler*, 13 Wend., 605. *Dickerson* v. *Tillinghast*, 4 Paige, 215, 222. *Clark* v. *Ely*, 2 Sandf. Ch. R., 166. *Stalker* v. *McDonald*, 6 Hill, 93. *Catlin* v. *Gunter*, 1 Kern. 368. *White* v. *Springfield Bank*, 1 Barb., 225.

STORRS, J. The court dismiss all enquiry into those claims of fact and law, made by the parties, which have reference to a former note of which the plaintiff was holder, and the defendant was endorser. Our view of other aspects of the case renders it unnecessary to decide whether the defendant, being directly indebted to the plaintiff, on account of having been legally charged with a liability, as such endorser, caused the note now in suit to be delivered to the latter, in satisfaction of that indebtedness, or whether, as claimed by the defendant, there was no such indebtedness at all, by reason of the want, not only of actual notice to him, of non-payment, but also of its legal equivalent, due diligence in the attempts made on the plaintiff's behalf to ascertain the defendant's residence.

There is as little occasion, as will be seen, to decide whether, according to the laws of the state of New York, or of any other jurisdiction, a recovery can be had upon the common counts, in *assumpsit*, in favor of the endorsee of such a note, as that on which this action is founded, against the endorser. In coming to the conclusion that the plaintiff is entitled to a judgment, we have not looked beyond the note itself, and the ordinary relation of the endorser of negotiable paper to its *bona fide* holder.

The contract, which is the subject of the present suit, was made in the state of New York, and by its terms, to be executed within the same jurisdiction. Its validity, operation and effect, at least, are therefore to be determined according

to the laws of that state.   It is urged on the part of the defendant, that, whatever may be the legal theory elsewhere, by the law of New York, the endorsee of an accommodation note, who receives it from a former holder, only in payment of a debt, at that time outstanding in his own favor, does not become a holder, for value, in that technical sense, which will preclude an endorser from setting up against him any equities, which exist between such endorser and any of the prior parties to the note.   We regard the title of the plaintiff as acquired under such circumstances, as to make his rights in the present suit dependent on the correctness of the doctrine just recited; that is, we shall regard the plaintiff as having received the note, (in suit,) in payment of Van Ingen's indebtedness.

As early as the year 1822, if not before, the courts of New York took the ground, that a party, whose legal or equitable rights had been violated by the unauthorized transfer of negotiable paper, had a superior equity to that of a holder, however innocent, who had received it merely as a security against an existing liability, and without parting with something of value, or relinquishing any other security at the time; and that, although he held by what would be a valid consideration between him, and the party, who had fraudulently negotiated the paper to him, he could not however be said to have given value for the note, and was not therefore to be treated as a *bona fide* holder, as against parties having prior equities, either as makers or former holders.   *Coddington* v. *Bay*, 20 Johns., 637.   This doctrine was recognized in several intervening cases, but the distinction suggested (as it would seem,) by the language of the court, between the receipt of negotiable paper, as collateral security for a debt, and its acceptance, in discharge of such debt, was explicitly recognized in subsequent decisions. *Bank of Salina* v. *Babcock*, 21 Wend. R., 499.   *Bank of Sandusky* v. *Scoville*, 24 Wend. R., 115.

In 1843, the deliberate opinion of Chancellor Walworth, apparently called out by the exceptions taken by Judge Story, (see *Swift* v. *Tyson*, 16 Pet. R., 1, to the decision of *Coddington* v. *Bay*,) was pronounced in the case of *Stalker* v. *McDonald*, 6 Hill. R., 93. This opinion is relied upon by the defendant, and it unmistakeably promulgates the principle, that a party who receives negotiable paper, either as nominal payment or security for the payment of an antecedent debt, without parting with any value, or relinquishing any previous security on the credit of it, does not take it " in the actual course of business, for a valuable consideration," in such a sense as to protect him against the equities of the maker, or former holder of the paper. It is contended by the learned Chancellor, that such is the law of England, and the opinion of Justice Story is formally disapproved of.

The opinion however, so far as it can be construed as rejecting the distinction between the transfer of negotiable paper as a collateral security for an outstanding debt, and as payment of such debt, was subsequently disavowed as extrajudicial, and was considered by Justice Duer, a departure " from a general and undoubted rule of mercantile law." *White* v. *Springfield Bank*, 3 Sand. Sup. Ct. 222.

The doctrine was, nevertheless, again called in question in 1854, in the case of *Youngs* v. *Lee*, 18 Barb. R., 187. It appeared that the note, on which the suit was brought, had been improperly diverted from its proper application, and fraudulently transferred by its holder to a creditor of his own, in payment of a note given by him for goods purchased and then not quite due. The creditors at once withdrew their own security from the bank, where it had been placed for collection, and delivered it up to their debtor to be cancelled. The supreme court held, that such a transaction is in the usual course of business, if the negotiable paper is thus received before its maturity, in payment and discharge of an outstanding indebtedness. The case was then brought before the court of appeals, 2 Kern. R., 551, where the decis-

ion of the supreme court was fully affirmed by a majority of the ultimate tribunal. From the evidence of the law of New York, as furnished by the reports of its judicial decisions, we cannot doubt that the law of that state, as applicable to our view of the facts in the present case, would entitle the plaintiff to recover, had his suit been brought in that state, and conforms to the view of the common law taken by Kent and other elementary writers, and the doctrine recognized in *Brush* v. *Scribner*, 11 Conn. R., 388, by the supreme court of Connecticut.

Judgment should therefore be rendered for the plaintiff.

In this opinion, the other Judges, ELLSWORTH and HINMAN, concurred.

Judgment for the plaintiff.